CRANBERRY HILL
CORPORATION, Plaintiff,

v.

Gail S. SHAFFER, as New York State,
Secretary of State, Defendant.

No. 85–CV–1317.

United States District Court,
N.D. New York.

March 4, 1986.
As Amended May 22, 1986.

Thomas S. West, Albany, N.Y., for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y., Albany, N.Y., for defendant; Lawrence L. Doolittle, Asst. Atty. Gen., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This action presents a constitutional challenge to Article 9–A of the New York Real Property Law, N.Y.Real Prop.Law §§ 337 *et seq.* (McKinney 1968 and Supp.1986), and the regulations promulgated thereunder, 19 N.Y.C.R.R. Part 135. Plaintiff seeks an order declaring Article 9–A invalid under the Commerce Clause, the First Amendment, and the Fourteenth Amendment to the Constitution and enjoining its enforcement. Presently before the court is plaintiff's motion for summary judgment. Because the court finds that Article 9–A and the regulations promulgated thereunder violate the Commerce Clause, the court grants plaintiff's motion.

## BACKGROUND

Plaintiff Cranberry Hill Corporation is a Pennsylvania corporation with its principal place of business in Pennsylvania. It owns and sells lots in the Penn Estates Subdivision located in Analomink, Pennsylvania. The subdivision is approximately eighty miles from New York City. Because of its proximity to New York, plaintiff markets extensively in New York State. According to plaintiff, New York residents have purchased approximately sixty percent of the lots that plaintiff has sold in the subdivision.

Article 9–A of New York's Real Property Law, N.Y.Real Prop.Law §§ 337 *et seq.*, governs the sale and lease of out-of-state subdivision lots. Under Article 9–A subdividers of out-of-state lots must file with the New York Department of State an offering statement containing certain specified information about the lots offered and the subdivider. N.Y.Real Prop.Law §§ 337–a, 337–b. They must also submit all proposed advertising for the State's approval. N.Y. Real Prop.Law § 337–b(3); 19 N.Y.C.R.R. § 135.17. The state charges a filing fee for each offering statement and advertisement. N.Y.Real Prop.Law §§ 337–b(3), 339. Sections 338, 339–b, and 339–c give the Department of State various investigative and enforcement powers. Article 9–A provides criminal sanctions for violations of the act, and the Department of State may seek injunctive relief against an offending subdivider, including a permanent injunction prohibiting the subdivider from marketing its lots to consumers in New York State. N.Y.Real Prop.Law §§ 338, 339–c(1). The act also contains a revocation provision that gives a purchaser or lessee the right to cancel within ten days any contract with a subdivider which the purchaser or lessee entered into without representation by an attorney. N.Y.Real Prop.Law § 337–c.

Article 9–A and its regulations apply to subdividers selling or leasing out-of-state lots under any method of sale. It also applies to subdividers selling or leasing instate lots under an installment plan. How-

ever, the act does not apply to subdividers who market instate lots by any method other than an installment plan, such as a mortgage or full cash payment.[1]

Plaintiff sells its lots for either full cash consideration or a down payment and purchase money mortgage. Because it is marketing out-of-state subdivision lots in New York, it is subject to Article 9–A. Plaintiff is also subject to the United States Department of Housing and Urban Development's (HUD) regulation under the Interstate Land Sales Act, 15 U.S.C. §§ 1701 *et seq.* (1983). Like Article 9–A, the Interstate Land Sales Act contains numerous disclosure requirements. Cranberry Hill has made the necessary disclosures mandated by the federal act and has filed its offering statement under Article 9–A.

On August 9, 1985, the *New York Post* published an unauthorized article concerning plaintiff's subdivision. The press release stated that skiing and snowmobiling were available to purchasers. In fact, skiing and snowmobiling are not available at the subdivision but are located several miles away. The New York Department of State found the news article misleading and suspended plaintiff's authorization to market its lots in New York State for two months. The State has voluntarily stayed the suspension pending the outcome of this motion.

On September 30, 1985, plaintiff filed the present complaint against defendant Gail S. Shaffer, New York's Secretary of State. The complaint alleges that Article 9–A and the regulations promulgated thereunder unlawfully discriminate against out-of-state subdividers in violation of the Commerce Clause and that the advertising restrictions constitute an impermissible prior restraint on plaintiff's commercial speech in violation of the First Amendment. Plaintiff also alleges that the suspension is arbitrary and violates plaintiff's due process rights.[2] Cranberry Hill seeks relief declaring Article 9–A and its regulations null and void and enjoining defendant from enforcing Article 9–A.

Plaintiff, contending that the Constitutional issues presented in this action can be determined as a matter of law, moves for summary judgment.

## DISCUSSION

The Commerce Clause gives Congress the power to regulate interstate trade. U.S. Const. art. 1, § 8, cl. 3.[3] Its purpose is to prevent commercial parochialism and promote free trade among the states. The Supreme Court has explained:

> It has long been the law that States may not "build up [their] domestic commerce by means of unequal and oppressive burdens upon the industry and business of the States." *Guy v. Baltimore,* [10 Otto 434, 443] 100 U.S. 434, 443 [25 L.Ed. 743] (1880). Were it otherwise, "the trade and business of the country [would be] at the mercy of local regulations, having for their object to secure exclusive benefits to the citizens and products of particular States." *Id.* [100 U.S.] at 442.

*Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 3057, 82 L.Ed.2d 200

---

1. Section 337(1) and (2) provide:
 As used in this article:
 1. The words "subdivided lands" and "subdivision" mean vacant land or lands sold or leased on the installment plan or offered for sale or lease on such plan and also vacant land or lands situated outside the state of New York and sold or leased or offered for sale or lease on the installment plan or upon any and all other plans, terms and conditions of sale or lease.
 2. The word "subdivider" shall include every person, partnership, corporation, company or association who or which engages directly or through an agent in the business of selling, leasing or offering for sale or lease subdivided lands and subdivisions to the public in this state.
 N.Y.Real Prop.Law § 337(1), (2).

2. Plaintiff has also alleged various state law claims; however, it concedes that these claims are precluded under *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

3. Article I, section 8, clause 3 of the United States Constitution provides in part, "The Congress shall have power ... (t)o regulate Commerce with foreign Nations, and among the several States...."

(1984). *See also City of Philadelphia v. New Jersey*, 437 U.S. 617, 623, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978) (stating, "(W)hat is ultimate is the principle that one state in its dealings with another may not place itself in a position of economic isolation."); J. Nowak, *et al., Constitutional Law*, p. 267 (2d ed. 1983) (stating, "(T)he rationale of the commerce clause was to create and foster the development of a common market among the states, eradicating internal trade barriers, and prohibiting the economic Balkanization of the Union.").

 The fact that the Constitution gives Congress the power to regulate interstate commerce, does not necessarily preclude state regulation. In the absence of federal legislation, the states are free to regulate commerce as long as they act within the restraints imposed by the Commerce Clause. *City of Philadelphia*, 437 U.S. at 623, 98 S.Ct. at 2535. Even in an area where Congress has legislated, concurrent state regulation concerning matters of local concern may coexist if federal regulation has not preempted the area and the state's regulation does not conflict with the federal legislation. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 350, 97 S.Ct. 2434, 2445, 53 L.Ed.2d 383 (1977). *See Great Atlantic and Pacific Tea Co., Inc. v. Cottrell*, 424 U.S. 366, 371, 96 S.Ct. 923, 928, 47 L.Ed.2d 55 (1976).

In the area of land sales, Congress has chosen to regulate the interstate sale of subdivision lots through the Interstate Land Sales Act, 15 U.S.C. §§ 1701 *et seq.* The federal act is designed to prevent fraud and requires subdividers to make various disclosures. The court can find no evidence that Congress intended to preempt this area. In fact, section 1708(e) of the Interstate Land Sales Act expressly permits the states to regulate land sales as long as their regulation does not conflict with the federal act.[4] The Interstate Land Sales Act also allows HUD to certify, and

thereby adopt, a state law which is substantially equivalent to the federal act. 15 U.S.C. § 1708(a).

 In the present action defendant argues first that out-of-state subdivision lots are not objects of interstate trade which are subject to Commerce Clause protection. Courts have interpreted the reach of the Commerce Clause broadly. They look at the activity's economic impact to determine what constitutes interstate commerce. An item of commerce need not cross state lines to fall within the Commerce Clause's protection if its sale or transportation will have an economic impact out-of-state. *See generally Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). It follows that a statute which restricts out-of-state sellers' access to instate consumers falls within the Commerce Clause's reach. *See American Camping Association v. Whalen*, 554 F.Supp. 396 (S.D.N.Y.1983). In the present action Article 9-A of the New York Real Property Law and its regulations arguably restrict subdividers, who are marketing out-of-state land, access to New York consumers. Because the restriction has an economic impact out-of-state, the Commerce Clause is implicated.

 Defendant further contends that the Commerce Clause cannot be a basis for attacking Article 9-A because Congress, pursuant to section 1708(e) of the Interstate Land Sales Act, has authorized the states to regulate interstate land sales. "When Congress so chooses, state actions which it plainly authorizes are invulnerable to constitutional attack under the Commerce Clause." *Northeast Bancorp, Inc. v. Board of Governors*, — U.S. ——, ——, 105 S.Ct. 2545, 2554, 86 L.Ed.2d 112 (1985). Section 1708(e), however, merely expresses Congress' intent not to preempt the area. The House Conference Report on section 1708(e) states:

---

4. 15 U.S.C. § 1708(e) provides:

 Nothing in this title (15 U.S.C. §§ 1701 *et seq.*) may be construed to prevent or limit the authority of any State or local government to

enact and enforce with regard to the sale of land any law, ordinance, or code not in conflict with this title.

It is the intention of the conferees that nothing in the provisions of this section will limit any State's power to impose strict registration requirements or substantive development standards on developers who want to sell land within that State. Once a State is certified and that State's property report becomes for all purposes the Federal property report, the Secretary may require a Federal cover sheet similar to the one presently in use.

H.R.Con.Rep. No. 706, 96th Cong., 1st Sess. 87, *reprinted in* 1979 U.S.Code Cong. & Ad.News 2317, 2402, 2446.

Section 1708(a) of the Interstate Land Sales Act provides the mechanism by which Congress may adopt a state's regulation of this area.[5] The state law certification provision was designed to eliminate the burden on developers of duplicative state and federal registration requirements where the state standards equal or exceed the federal requirements. H.R.Rep. No. 154, 96th Cong., 1st Sess. 34, *reprinted in* U.S.Code Cong. & Ad.News 2317, 2349–50.[6] The legislative history also reveals that Congress did not intend to abandon the consumer to state law protection where the state's regulatory scheme is less stringent than the federal requirements. The House Report provides, "The Committee believes that where states have not developed strong laws which assure full disclosure about the land in question, consumers should not be abandoned by removing the protections and remedies provided by the existing federal statute." H.R.Rep. No. 154, 96th Cong., 1st Sess. 34, *reprinted in* U.S.Code Cong. & Ad.News at 2350.

To ensure adequate consumer protection the Interstate Land Sales Act sets forth a specific procedure for obtaining state law certification. The state must formally apply to HUD, and notice of the state's application must be published in the Federal Register for a thirty-day comment period. 15 U.S.C. § 1708(a); 24 C.F.R. § 1710.-502(a), (b) (1985). The Secretary of HUD then reviews the state's laws, regulations, and administrative procedures to determine if they meet the section 1708(a) requirements. 15 U.S.C. § 1708(a); 24 C.F.R. § 1710.503. The regulations further require that the Secretary give the state written notice of acceptance or rejection.[7] If

---

**5.** 15 U.S.C. § 1708(a) provides:

*Certification of substantially equivalent State Law*

(a) Criteria; request by State. (1) A State shall be certified if the Secretary determines—

(A) that, when taken as a whole, the laws and regulations of the State applicable to the sale or lease of lots not exempt under section 1403 [15 U.S.C. § 1702] require the seller or lessor of such lots to disclose information which is at least substantially equivalent to the information required to be disclosed by section 1408 [15 U.S.C. § 1707]; and

(B) that the State's administration of such laws and regulations provides, to the maximum extent practicable, that such information is accurate.

(2) In the case of any State which is not certified under paragraph (1), such State shall be certified if the Secretary determines—

(A) that, when taken as a whole, the laws and regulations of the State applicable to the sale or lease of lots not exempt under section 1403 [15 U.S.C. § 1702] provide sufficient protection for purchasers and lessees with respect to the matters for which information is required. In administering this title [15 U.S.C. §§ 1701 *et seq.*], the Secretary shall cooperate with State authorities charged with the responsibility of regulating the sale or lease of lots which are subject to this title [15 U.S.C. §§ 1701 *et seq.*].

**6.** The House Report provides in part:

The bill proposes a procedure whereby HUD will certify states whose disclosure requirements, taken as a whole, meet or exceed the federal requirements. Where a state does not require as much disclosure as the federal law but has development standards that preclude the necessity of disclosing that information to consumers, a state may also be certified. H.R.Rep. No. 154, 96th Cong., 1st Sess. 34, *reprinted in* U.S.Code Cong. & Ad.News at 2349–50.

**7.** The court questions whether the Secretary would approve New York's requirement that subdividers submit all advertising for prior review. Commenting on the anti-fraud provisions of the Interstate Land Sales Act, the House Report states, "This provision does not give OILSR (the Office of Interstate Land Sales Registration at HUD) the authority to require the submission for approval of advertising material prior to its use." H.R.Rep. No. 154, 96th Cong., 1st Sess. 35, *reprinted in* U.S.Code Cong. & Ad. News at 2351.

rejected, the Secretary must specify the changes which the state must make to obtain certification. 24 C.F.R. § 1710.503. Finally, the Secretary must periodically review the state's laws, regulations, and administrative procedures to determine if they continue to meet the federal requirements. If they do not, the Secretary must withdraw certification. 15 U.S.C. § 1708(d); 24 C.F.R. § 1710.505.

The entire legislative scheme of section 1708 demonstrates that Congress did not intend to adopt by implication state regulation of interstate land transactions. A state must actively seek and obtain written certification by HUD before its regulation will be deemed approved by Congress for Commerce Clause purposes. In the present action, Article 9–A has not been certified. Because Congress has not approved Article 9–A of the New York Real Property Law and the regulations promulgated thereunder, they are subject to Commerce Clause scrutiny.

■ In the absence of federal preemption, the state may legislate in areas of local concern, such as consumer protection, if the state's legislation does not contravene the Commerce Clause's purpose. The test for determining whether a state's legislation is valid under the Commerce Clause is set forth in *City of Philadelphia:*

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.... If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*City of Philadelphia,* 437 U.S. at 624, 98 S.Ct. at 3535 (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) ). However, the state may not discriminate against out-of-state products solely because of their origin. "Thus, where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected." *Id.* "Economic protectionism" may be based on either discriminatory purpose or effect. *Baccus Imports, Ltd.,* 468 U.S. at ——, 104 S.Ct. at 3055; *Hughes v. Oklahoma,* 441 U.S. 322, 337, 99 S.Ct. 1727, 1737, 60 L.Ed.2d 250 (1979); *City of Philadelphia,* 437 U.S. at 626, 98 S.Ct. at 2536–37.

■ The court must therefore determine (1) whether Article 9–A regulates evenhandedly with only an incidental effect on interstate commerce or discriminates against interstate commerce on its face or in its practical effect; (2) whether Article 9–A has a legitimate local purpose; and (3) if it does, whether that purpose could be promoted as well by other means with less discriminatory impact on interstate commerce. *Hughes,* 441 U.S. at 336, 99 S.Ct. at 1736.

As originally enacted Article 9–A of the Real Property Law applied to vacant land sold or leased, or offered for sale or lease, on an installment plan. The statute did not differentiate between instate and out-of-state lands. In 1940, the New York legislature amended Article 9–A. The amendment extended the statute's coverage to out-of-state vacant land regardless of the method of sale. What little legislative history that exists reveals that the legislature was concerned that out-of-state sellers were changing their method of sale to circumvent Article 9–A's requirements. *See* Memorandum from the Department of State to His Excellency the Governor Re: Assemblyman Austin's Bill, Print No. 715, Int. 704, dated March 26, 1940.[8]

---

**8.** The memorandum provides in part:
 Since the adoption of Article 9A of the Real Property Law, there appeared cases of efforts to circumvent that law. It now appears that in order to avoid compliance with the law, a number of sellers of land located outside of the State of New York, particularly sellers of "orange groves," "oil lands," "gold mining

In its current form Article 9–A and its regulations apply to all subdividers of out-of-state, vacant land which is sold or leased under any plan. Article 9–A does not apply to subdividers of instate land, except those who sell lots under an installment plan. As a result, subdividers of out-of-state lots, unlike sellers of instate lots, must comply with both the Interstate Land Sales Act and Article 9–A. The filings under Article 9–A must be continually updated. N.Y.Real Prop.Law § 337–b(8); 19 N.Y.C.R.R. § 135.15. Of necessity, such duplicative filings require considerable additional time and expense to prepare which subdividers of instate lots do not incur. Moreover, subdividers of out-of-state land must submit any advertising to the State for review prior to publishing. While subdividers of instate lots are free to advertise basically in the form that they wish, if they do so truthfully, the State dictates much of the content and form of the out-of-state subdivider's advertising. *See* N.Y.C.R.R. §§ 135.17, 135.18. Subdividers of out-of-state land must also pay substantial filing fees which include $600.00 per filing plus $6.00 per lot offered over one hundred lots and up to $25.00 per advertisement. N.Y. Real Prop.Law §§ 337–b, 339. In addition, they are subject to investigation expenses including travel costs if the state decides to inspect the land. N.Y.Real Prop.Law § 338(2). Subdividers of instate land are not subject to these costs. Finally, a buyer or lessee may cancel an agreement with a subdivider of out-of-state lots for any reason within ten days of delivery if the sale or lease, or offer to purchase or lease, was made by the buyer or lessee without representation by an attorney. N.Y.Real Prop.Law § 337–c. A subdivider of out-of-state lots may thus lose a legitimate contract while the instate subdivider has no such risk.

Article 9–A distinguishes between subdividers based solely on whether their lots are located in New York State. Because subdividers of out-of-state land are subjected to substantial costs and procedural burdens to which subdividers of instate land are not subjected, Article 9–A places out-of-state subdividers at a competitive disadvantage marketing their lots to New York residents. Accordingly, Article 9–A of the New York Real Property law discriminates against interstate commerce both on its face and in its effect. The Supreme Court has stated:

> Such facial discrimination by itself may be a fatal defect, regardless of the State's purpose, because "the evil of protectionism can reside in legislative means as well as legislative ends." ... At a minimum such facial discrimination invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives. (citations omitted)

*Hughes*, 441 U.S. at 337, 99 S.Ct. at 1737. *See also City of Philadelphia*, 437 U.S. at 624, 98 S.Ct. at 2535–36.

Defendant, nevertheless, contends that Article 9–A is valid because it serves a legitimate local purpose. According to de-

lands" pursue the fee-transfer method of sale as distinguished from the installment plan method of sale,....
To give the maximum protection to the New York State public purchasing vacant lands, and to eliminate all deviations and circumventions of said law, it is found necessary to amend the provisions of Article 9A of the Real Property Law to make the regulatory provisions of said law applicable to those engaged in the sale of lands located outside of the State of New York, irrespective of what method of sale is pursued, be such sales made on the installment plan, fee-transfer plan, or any other plan or scheme of conveyancing.... The within bill is a step in the right direction and is aimed to make the New York Act

(Article 9A) entirely consistent with the California Act, with the sole exception that the sale of lands situated within the State of New York are still under no regulation.
Memorandum of the Department of State to His Excellency the Governor Re: Assemblyman Austin's Bill, Print No. 715, Int. 704, dated March 26, 1940.
The memorandum also indicates that Article 9–A was a compromise measure. Plaintiff argues that, rather than adopting legislation applicable to all vacant land, the legislature enacted the original compromise and the 1940 amendment to protect local land sellers. According to plaintiff, the purpose of Article 9–A was economic protectionism which would render it invalid under the *per se* rule.

fendant, Article 9–A was enacted to prevent out-of-state subdividers from defrauding New York consumers. Certainly, the State's interest in protecting its residents from consumer fraud is a legitimate local purpose within the State's police power. However, the State's legislation must fail if the local interest could be promoted as well with lesser impact on interstate commerce. *Hughes,* 441 U.S. at 336, 99 S.Ct. at 1736; *City of Philadelphia,* 437 U.S. at 624, 98 S.Ct. at 2535–36; *Hunt,* 432 U.S. at 353, 97 S.Ct. at 2446–47.

In the present action, defendant argues that the state statute is necessary as a deterrent because the State's existing remedies would be insufficient to deter fraud in this area. Specifically, defendant contends that New York and its residents would not be able to litigate against out-of-state subdividers in New York courts because the State's courts would often lack personal jurisdiction over the subdividers. Defendant also argues that enforcing New York verdicts through contempt proceedings in out-of-state courts would be difficult, if not impossible.

The court finds defendant's argument unpersuasive. Subdividers of out-of-state lots, like subdividers of instate lots, are subject to the Interstate Land Sales Act's disclosure requirements. Moreover, New York has other consumer protection legislation which prohibits fraud and false advertising. *See eg.* N.Y.Gen.Bus.Law §§ 350, 350–d(3) (McKinney 1968 & Supp.1986) (false advertising); N.Y.Gen.Bus.Law § 396 (McKinney 1984) (unlawful selling practices); N.Y.Exec.Law § 63(12) (McKinney 1982 & Supp.1986) (fraud); N.Y.Penal Law § 190.20 (McKinney 1975) (false advertising). Common law tort remedies are also available, and the Interstate Land Sales Act provides defrauded consumers with a private right of action. 15 U.S.C. § 1709.

In most instances, the New York courts will have personal jurisdiction over an out-of-state subdivider, who defrauds a New York resident or falsely advertises in New York, under New York's long arm statute, N.Y.Civ.Pract.Law § 302 (McKinney 1972 & Supp.1986). *See Burger King Corp. v. Rudzewicz,* — U.S. —, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Marine Midland Bank v. Keplinger & Associates, Inc.,* 488 F.Supp. 699, 673 (S.D.N.Y.1980) (personal jurisdiction exists where defendant knowingly sends false statement into New York State intending it to be relied upon). With regard to enforcement, foreign state courts must give New York judgments full faith and credit in any contempt proceeding. In criminal proceedings the State Attorney General has extradition powers. N.Y.Crim. Proc.Law §§ 570.02 *et seq.* (McKinney 1984) (Uniform Criminal Extradition Act). Where the New York courts are not available, a wronged consumer or the State may litigate in federal court to avoid any real or perceived inequity from litigating in a foreign state court. In almost all cases the federal courts will have diversity jurisdiction or federal question jurisdiction through the Interstate Land Sales Act, or both.

The court finds that the Interstate Land Sales Act adequately protects New York residents from fraud by subdividers of out-of-state land. The multitude of state remedies both statutory and common law, as well as the Interstate Land Sales Act enforcement provisions, are also a sufficient deterrent. "Where, as here, a statute imposes a restriction on the access of out-of-state sellers to in-state buyers, 'the burden falls on the state to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake.' " *American Camping Association,* 554 F.Supp. at 399, *quoting Hunt,* 432 U.S. at 353, 97 S.Ct. at 2446–47. In the present action defendant has failed to satisfy her burden of showing that Article 9–A is the least discriminatory alternative available to preserve the local interest. The court therefore finds that Article 9–A of the New York Real Property Law and the regulations promulgated thereunder are invalid under the Commerce Clause.

The court's ruling does not mean that New York may not regulate the sale or lease of vacant land. It merely means that if the state choses to regulate in this area, it must do so evenhandedly.

Because the court finds that the challenged statute violates the Commerce Clause, the court does not reach plaintiff's other Constitutional arguments. However, the court doubts that legislation requiring subdividers to submit their advertising for state review prior to publishing, even if applied nondiscriminatorily, could withstand First Amendment scrutiny under the

*Central Hudson* test. *See generally, Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980); *American Camping Association,* 554 F.Supp. 396.

Because Article 9–A of the New York Real Property Law and the regulations promulgated thereunder are unconstitutional under the Commerce Clause, the court grants plaintiff summary judgment. The court declares Article 9–A null and void to the extent that it discriminates against interstate commerce. Article 9–A and its regulations are invalid insofar as the words "subdivided lands" and "subdivision" contained therein mean vacant land sold outside the State of New York and sold or leased or offered for sale or lease upon any and all plans, terms and conditions of sale or lease other than on the installment plan. The Secretary of State, the Attorney General of the State, and/or such other persons having responsibility and authority therefor, is hereby enjoined from enforcing Article 9–A of the Real Property Law and its regulations to regulate transactions involving vacant land located outside of New York State in any manner different from transactions involving vacant land located within New York State.

IT IS SO ORDERED.