OLD COACH DEVELOPMENT CORP., INC. and Land's Edge Enterprises, Inc., Plaintiffs,

v.

Herbert M. TANZMAN, Myles J. Herbert, Robert Klein, Edward Runner, Joseph Panuccio, Charles E. Plumeri, Tom Colitas, and Queen E. James, in their capacities as members of the New Jersey Real Estate Commission, Daryl G. Bell, in his capacity as Executive Director of the New Jersey Real Estate Commission, and James Logan, III, in his capacity as Supervisor of the Bureau of Subdivided Lands Sales Control within the New Jersey Real Estate Commission, Defendants.

Civ. A. No. 87–3656 (JCL).

United States District Court, D. New Jersey.

Aug. 26, 1988.

Kimmelman, Wolff & Samson by Gage Andretta, Roseland, N.J., for plaintiffs.

W. Cary Edwards, Atty. Gen. of New Jersey, on the brief, Jeffrey A. Bartolino, Deputy Atty. Gen., Trenton, N.J., for defendants.

Nat. Ass'n of Real Estate License Law Officials, on the brief, Donna L. Rice, Asst. Atty. Gen. of Wyoming, Cheyanne, Wyo., Organ & Strawinski by Frederick A. Organ, Consultant, River Vale, N.J., amicus curiae in support of defendants.

## OPINION

LIFLAND, District Judge.

The plaintiffs in this action are corporate owners and sellers of subdivided lots of real estate in Pennsylvania. They seek to invalidate the New Jersey Land Sales Full Disclosure Act, N.J.Stat.Ann. §§ 45:15–16.3 *et seq.* and regulations promulgated under the Act, N.J.Admin.Code §§ 11:5–1.1 *et seq.*, as violative of the Commerce Clause and First and Fourteenth Amendments of the U.S. Constitution, and to enjoin its enforcement against them. Defendants are representatives of the New Jersey Real Estate Commission, the state agency that enforces the act. Both parties have moved for summary judgment. This court holds that the New Jersey Land Sales Full Disclosure Act is unconstitutional under the Commerce Clause, and grants the plaintiffs' motion.

### Background

The plaintiffs, Old Coach Development Corp., Inc. and Land's Edge Enterprises, Inc. [hereinafter collectively referred to as "Old Coach"], are affiliated corporations incorporated and with their principal place of business in Pennsylvania. Old Coach sells unimproved subdivided lots of real estate located in an area in Northern Pennsylvania known as the "Poconos." These lots are often sold to residents of New Jersey, as the cost of real estate in the Poconos is generally lower than real estate in nearby New Jersey. The lots are also frequently sold to Pennsylvania and New York residents. Accordingly, Old Coach regularly advertises in newspapers in these regions.

One of these advertisements appeared in the *Trenton Times* on June 21, 1987. In a letter dated July 17, 1987, the New Jersey Real Estate Commission [hereinafter "Commission"] informed Old Coach that this advertisement appeared to violate the New Jersey Land Sales Full Disclosure Act and its accompanying regulations. Old Coach was given the option to either register with the Commission in accordance with the Act, or state in all future national advertisements, "This advertisement is not an offering to New Jersey residents." Exhibit A to Affidavit of Gerald Gay, President of Old Coach.

On September 4, 1987, Old Coach filed suit in this court, alleging that the Act was unconstitutional and void under the Commerce Clause and the First and Fourteenth Amendments to the U.S. Constitution, and seeking temporary and permanent relief from enforcement of the Act against Old Coach. Old Coach and the Commission have both moved for summary judgment. The National Association of Real Estate License Law Officials [hereinafter "NARELLO"] has been permitted to appear and participate in the case as an *amicus curiae.* NARELLO filed a brief supporting the Commission's position. Oral argument has been waived by the parties.

To resolve the constitutional issues in this case the court must analyze the interplay of three statutory schemes, one federal and two enacted by the New Jersey legislature, establishing registration and other requirements for land developers

wishing to sell or lease lots ·in a common subdivision to New Jersey residents. A brief discussion of these acts is necessary to understand the issues raised by the parties.

The Interstate Land Sales Full Disclosure Act of 1968, 15 U.S.C. §§ 1701 *et seq.* [hereinafter "Federal Act"], "is directed at protecting purchasers from abuse by real estate developers through interstate commerce and the use of the mails in the promotion and sale of properties offered as part of a common promotional plan." *Nargiz v. Henlopen Developers*, 380 A.2d 1361 (Del.1977). Unless a developer or agent can claim one of the statutory exemptions enumerated in 15 U.S.C. § 1702, he must: (1) file a statement of record with the Secretary of Housing and Urban Development pursuant to 15 U.S.C. §§ 1703(a)(1)(A), 1704, containing the information and documents described in 15 U.S.C. § 1705; (2) furnish a printed property report to the purchaser or lessee prior to any signing or agreement between the parties pursuant to 15 U.S.C. §§ 1703(a)(1)(B), 1707; and (3) refrain from fraudulent or deceptive schemes associated with the sale or lease of the property, or from making misrepresentations regarding the property and its amenities, pursuant to 15 U.S.C. § 1703(a)(1)(C)–(D), (a)(2).

The enforcement of the Federal Act itself is not at issue in this case. However, 15 U.S.C. § 1708(e) states in relevant part: "Nothing in this chapter may be construed to prevent or limit the authority of any State or local government to enact and enforce with regard to the sale of land any law, ordinance, or code not in conflict with this chapter." In addition, 15 U.S.C. § 1713 states, "The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity." New Jersey has enacted two relevant statutes subsequent to the Federal Act.

In 1975, the New Jersey legislature enacted the first of these, the Land Sales Full Disclosure Act, N.J.Stat.Ann. §§ 45:15–16.3 *et seq.* [hereinafter "Interstate Act"]. The Interstate Act applies only to common pro-

motional plans to be sold to New Jersey residents where the subdivided lands are "located outside of the State of New Jersey." N.J.Stat.Ann. § 45:15–16.4(f). In many respects the Interstate Act operates in the same manner as the Federal Act. Unless the seller of an out-of-state subdivision can claim an exemption from the Interstate Act as enumerated in N.J.Stat.Ann. § 45:15–16.6, he must register a statement of record with the New Jersey Real Estate Commission before the lots can be offered or sold. N.J.Stat.Ann. § 45:15–16.21. Like the Federal Act, the Interstate Act has requirements governing the contents of the statement of record and documents that must accompany it, N.J.Stat.Ann. § 45:15–16.10, and of the filing fees to be paid in order to register the subdivisions, N.J.Stat.Ann. § 45:15–16.8. The Commission is empowered to review applications for registration, hold hearings and promulgate orders and other relief in the event of noncompliance, investigate, and enforce the Interstate Act. As with the Federal Act, a person violating the Interstate Act can face civil and criminal liability.

However, it is undisputed that the Interstate Act has broader requirements than the Federal Act, as authorized by the Federal Act. The Commission states in its brief that "while the New Jersey Legislature has generally molded its statutory scheme after the Federal Act, it has gone further in several areas in order to afford its citizens greater protection from the evils associated with interstate land sale schemes." Defendants' Brief in Opposition to Plaintiffs' Motion for Preliminary Relief and Summary Judgment and in Support of Defendants' Cross–Motion for Summary Judgment [hereinafter "Defendants' Brief"], at 11.

In 1978, the New Jersey legislature passed the third statute of importance to this case, the Planned Real Estate Development Full Disclosure Act, N.J.Stat.Ann. §§ 45:22A–21 *et seq.* [hereinafter "Intrastate Act"]. Regulations promulgated thereunder are set forth at N.J.Admin.Code §§ 5:26–1.1 *et seq.* The Intrastate Act applies only to lands located "situated in this State." N.J.Stat.Ann. § 45:22A–39. The

purpose of the Intrastate Act is similar to the Interstate Act, and both Acts subject sellers of subdivisions of land to registration requirements, public offering statement requirements, and penalties.

Two important distinctions between the Intrastate Act and the Interstate Act form the basis for this suit. First, the Intrastate Act applies to lands located within New Jersey, while the Interstate Act applies to lands located outside New Jersey. Second, the procedures, disclosure requirements, and penalties set forth in the Intrastate Act are not the same as in the Interstate Act. This court's decision to grant plaintiff's motion for summary judgment is based on the following differences between the Intrastate and Interstate Acts:

(1)—There is a difference in the criminal penalties that can be imposed upon persons violating the Acts. A jail term can be imposed under the Interstate Act, but not under the Intrastate Act. The maximum penalty under the Intrastate Act is a fine of $50,000 per violation, but this is of course not as severe a punishment as a jail term. *Compare* N.J.Stat.Ann. § 45:15–16.22 *with* N.J.Stat.Ann. § 45:22A–38.

(2)—There is a difference as to whether offers or dispositions of unimproved, unencumbered open space are exempt. The Intrastate Act provides for such an exemption, N.J.Stat.Ann. § 45:22A–25(a)(8), while the Interstate Act does not.

(3)—There is a difference as to whether offers or dispositions of fewer than 100 lots can be exempt. Under the Intrastate Act there is such an exemption, N.J.Stat.Ann. § 45:22A–25(a)(7). Under the Interstate Act there is not. The Commission in its brief argues that it can choose not to enforce the Interstate Act in its discretion because of the "small amount involved or the limited character of the offering," Defendants' Brief at 14, and also argues that

the Intrastate Act's 100–*lot* exemption might not apply to Old Coach even if it were a seller of in-state land.[1] It is clear, however, that unless a favorable interpretation of the 100–*lot* exemption is made by the enforcers of the Intrastate Act, the 100–*lot* exemption applies under the Intrastate Act only. Neither the Commission nor NARELLO cite any authority for the proposition that the possibility of lenient enforcement of the Interstate Act, coupled with aggressive enforcement of the Intrastate Act, eliminates this disparity between the Acts.

(4)—There is a difference in the amount of filing fees and annual fees thereafter that are imposed when a seller applies for registration. Under the Intrastate Act, there is no annual fee, and the initial filing fee is "$500 plus $35 per lot, parcel, unit, or interest contained in the application...." N.J.Stat.Ann. § 45:22A–27(e). Under the Interstate Act, however, there is an initial fee of "$250 for subdivisions containing fewer than 100 lots, parcels, units, or interests, plus $1.00 for each lot, parcel, unit or interest in excess of 100 with a maximum fee of $1000," and there is also an annual fee $150 per year for subdivisions with fewer than 50 lots, and $250 per year otherwise. N.J.Stat.Ann. § 45:15–16.8. Whether a given developer pays more or less under the Interstate Act will depend on the fortuitous circumstances of the number of lots developed or the duration of its development and sales efforts. It would be highly unlikely for a developer of in-state land to pay the same fees as a developer of out-of-state land having the same number of lots.

(5)—There is a difference as to whether a statement from a licensed civil engineer describing the property in question is required. Under the Interstate Act, there is such a requirement. N.J.Stat.Ann. § 45:15–16.10(f). The Intrastate Act has

---

**1.** The Commission has submitted an affidavit by Stewart Palilonis, Manager of the Planned Real Estate Section, Division of Housing and Development, Department of Community Affairs that administers the Intrastate Act. In the affidavit Mr. Palilonis states that the 100–lot exemption is interpreted to not apply to entrepreneurs who acquire lots in a subdivision that initially contained more than 100 lots. The Commission has submitted another affidavit by Robert Carter, an investigator for the Commission, indicating that Old Coach would fall under this interpretation, even though Old Coach is the actual seller of only fifty-one lots.

no such requirement. The cost of such a statement must be borne by the developer of out-of-state lands.

(6)—There is a difference in the regulation of reimbursement of travel expenses offered to prospective purchasers. The regulations applicable to the Interstate Act, N.J.Admin.Code § 11:5–1.25(h)(8), provide for limitations on travel expense reimbursement that an out-of-state developer can give to a prospective buyer. There is no such limitation in the Intrastate Act.

(7)—There is a difference in how the annual report requirement may be terminated. In both the Intrastate and Interstate Acts an annual report is required to be filed with the respective agencies administering the Act. Only in the Intrastate Act, however, is there an additional provision terminating this requirement "if the agency determines that such annual report is no longer necessary for the protection of the public interest, or when the annual report reveals that the developer no longer retains any interest, and no longer has contractual, bonded or other obligations in the development...." *Compare* N.J.Stat. Ann. § 45:15–16.14 *with* N.J.Stat.Ann. § 45:22A–31. The Commission has argued that an out-of-state developer could apply to be exempted from the annual report requirement under N.J.Stat.Ann. § 45:15–16.6(c). Defendants' Brief at 18–19. The Commission offers no evidence that this is actually the procedure for termination of the annual report requirement under the Interstate Act, however. Only the Intrastate explicitly authorizes such a procedure.

(8)—There is a difference as to whether a developer is required to list the range of selling prices or rents for the lots proposed to be sold or leased. This is required under the Interstate Act, but it is not required under the Interstate Act. *Compare* N.J. Stat.Ann. § 45:15–16.10(d) *with* N.J.Stat. Ann. § 45:22A–27.

Old Coach has referred to several other differences between the Intrastate and Interstate Acts that work to its detriment, and the extent of these differences is disputed by the Commission. This court need not pursue the merits of these disputes. The differences between the Intrastate Act and Interstate Act listed above demonstrate that there are significant costs that could be imposed upon Old Coach that would not be imposed were Old Coach's lots located within New Jersey and thus subject to the Intrastate Act. For example, Old Coach has estimated the cost of obtaining a civil engineer's opinion on the condition of the property to be sold at $50,000. Affidavit of Gerald Gay, President of Old Coach Development Corp., Inc. and Land's Edge Enterprises, Inc., at 7–8.

### Standing and Exhaustion of Administrative Remedies

■ The Commission and NARELLO argue that Old Coach did not exhaust all of its remedies before bringing suit. Specifically, the Commission states that Old Coach could have applied for an exemption under the Interstate Act, N.J.Stat.Ann. § 45:15–16.6(c). This argument is without merit. Part of the harm that Old Coach complains of is the cost of applying for an exemption from the Interstate Act's discriminatory provisions. In *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231 (3d Cir.), *cert. denied sub nom. General Public Util. Corp. v. Susquehanna Valley Alliance*, 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981), the Third Circuit enunciated three circumstances where the doctrine of exhaustion of administrative remedies is not applicable: "We have declined to require exhaustion when the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights ..., when resort to administrative procedures is 'clearly shown to be inadequate to prevent irreparable injury,' ... or when exhaustion is 'futile.'" (citations omitted). *Susquehanna Valley Alliance*, 619 F.2d at 245. As will be seen, this case falls under the first of these categories, thereby eliminating the exhaustion requirement.

In *Riggs v. Long Beach Township*, 101 N.J. 515, 503 A.2d 284 (1986), the New Jersey Supreme Court rejected the argument that plaintiff landowners were required to exhaust administrative remedies

and attempt to obtain a variance before challenging the constitutionality of a zoning ordinance. The court reasoned that "[a] local planning board's consideration of an application for a variance in these circumstances would have no bearing on the issues raised by the plaintiffs' claim that the ordinance is unconstitutional." *Riggs*, 101 N.J. at 525–26, 503 A.2d 284. The facts and logic of *Riggs* are applicable to this case. It would make no more sense to require Old Coach to seek an exemption from the Interstate Act where that act itself is challenged as unconstitutional, than for the plaintiffs in *Riggs* to have been forced to obtain a variance from a zoning ordinance whose constitutionality was challenged.

### Commerce Clause

█ The transactions regulated by the Interstate Act are protected by the Commerce Clause of the U.S. Constitution. "All objects of interstate trade merit Commerce Clause protection; none is excluded by definition at the outset." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 622, 98 S.Ct. 2531, 2534, 57 L.Ed.2d 475 (1978) (holding, *inter alia*, that waste moved or attempted to be moved between states falls under the Commerce Clause). It is of no moment that the lands regulated by the Interstate Act do not cross state lines. If a New Jersey restriction has an economic impact outside of its borders, "the Commerce Clause is implicated." *See Cranberry Hill Corp. v. Shaffer*, 629 F.Supp. 628, 631 (N.D.N.Y.1986) and cases cited. Because the extra burdens imposed on sellers of out-of-state land by the Interstate Act could restrict their access to New Jersey residents, the Interstate Act must satisfy Commerce Clause scrutiny.

Article I, section 8, clause 3 of the U.S. Constitution states that Congress shall have power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." From this clause there have developed two Commerce Clause doctrines. The first doctrine enables Congress to regulate an activity so long as that activity would have a substantial economic effect upon interstate com-

merce, either by an individual act or by cumulative effect. *See Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942); *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937). It is the enabling Commerce Clause which is the constitutional basis for the Federal Act in this case.

The second Commerce Clause doctrine, commonly known as the "dormant" or "negative" Commerce Clause, "limits the power of the States to erect barriers against interstate trade," unless the state legislature regulates a matter of a legitimate local concern. A state's ultimate purpose in enacting legislation "may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently." *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 35–36, 106 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980); *Philadelphia*, 437 U.S. at 626–27, 98 S.Ct. at 2537.

Since the Federal Act explicitly authorizes states to enact protective legislation "with regard to the sale of land ... not in conflict with this [act]," 15 U.S.C. § 1708(e), and the Federal Act does not cover intrastate land transactions, 15 U.S. C. § 1702(b)(7)(A), the Intrastate Act is not challenged and is clearly constitutional under both Commerce Clause doctrines as a matter of legitimate local concern to New Jersey residents. Old Coach challenges the Interstate Act as violative of the "dormant" Commerce Clause doctrine, however. The two issues that are dispositive of the Interstate Act's constitutionality are: (1) which Commerce Clause doctrine would provide the basis for its constitutionality; and (2) what standard must be met to uphold its constitutionality under the applicable Commerce Clause doctrine.

█ The Commission seems to argue that the Interstate Act is supported by both Commerce Clause doctrines. Their reasoning as to the enabling Commerce Clause doctrine can be summarized as follows: (1) The Federal Act regulates interstate land sales; (2) The Federal Act grants authority to the states to enact legislation

not in conflict with the Federal Act; and thus (3) "The clear import of the above sections is that Congress contemplated that individual states were free to offer consumers more protection in the area of *interstate* land sales." (emphasis added) Defendants' Brief at 9. The Commission's argument is incomplete. When a federal statute authorizes state legislatures to draft and enforce legislation not inconsistent with federal legislation, if a state chooses to offer its citizens more protection in interstate transactions, it must also provide that same added protection with respect to intrastate transactions, pursuant to the dormant Commerce Clause. *See Cranberry Hill Corp. v. Shaffer*, 629 F.Supp. 628, 633 (N.D.N.Y.1986) ("In the absence of federal preemption, the state may legislate in areas of local concern, such as consumer protection, if the state's legislation does not contravene the Commerce Clause's purpose.").

Thus, the court's analysis must focus on whether the Interstate Act conflicts with the dormant Commerce Clause. The Supreme Court has set forth a two-tiered test for determining the proper standard to be met by a state legislature:

This Court has adopted what amounts to a two-tiered approach to analyzing state economic regulation under the Commerce Clause. When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. *See, e.g., Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); *Shafer v. Farmers Grain Co.*, 268 U.S. 189, 45 S.Ct. 481, 69 L.Ed. 909 (1925); *Edgar v. MITE Corp.*, 457 U.S. 624, 640–643, 102 S.Ct. 2629, 2639, 2641, 73 L.Ed.2d 269 (1982) (plurality opinion). When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S.

137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). We have also recognized that there is no clear line separating the category of state regulation that is virtually *per se* invalid under the Commerce Clause, and the category subject to the *Pike v. Bruce Church* balancing approach. In either situation the critical consideration is the overall effect of the statute on both local and interstate activity. *See Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 440–441, 98 S.Ct. 787, 791–792 (1978).

*Brown–Forman Distillers v. N.Y. Liquor Authority*, 476 U.S. 573, 578–79, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986).

Old Coach contends that the Interstate Act should be struck down "without further inquiry." The Commission recognizes the two-tiered approach but contends that when there is facial discrimination "[a]t minimum, this discrimination mandates strict scrutiny of a state law, and the state must demonstrate that the statute serves a legitimate local purpose and that this purpose could not be served as well by nondiscriminatory means." Defendants' Brief at 23 (citing *Hughes v. Oklahoma*, 441 U.S. 322, 337, 99 S.Ct. 1727, 1737, 60 L.Ed.2d 250 (1979)). The Commission argues that the power of New Jersey to protect its citizens against fraud and deception by out-of-state sellers of land justifies the differences between the Interstate and Intrastate Acts.

By the very wording of the two-tiered approach enunciated in *Brown–Forman Distillers*, the first tier clearly applies to this case. Under the statutory scheme currently employed in New Jersey, there is one set of statutes applicable to dispositions of land outside of New Jersey, and another set of statutes applicable to dispositions inside New Jersey. As the court has noted *supra*, there are costs imposed upon sellers of out-of-state land that are not imposed upon sellers of in-state land. Thus, "the overall effect of the statute on both local and interstate activity," *Brown–Forman Distillers, supra*, is discriminatory.

In holding that the Interstate Act unconstitutionally discriminates against sellers of out-of-state land, this court need not reach the conclusion that the *intent* of the New Jersey legislature was discriminatory. It is enough that the *effect* of the Intrastate/Interstate dichotomy is discriminatory. In *Hunt v. Washington Apple Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Supreme Court struck down a North Carolina statute requiring that all closed containers of apples sold in, offered for sale, or shipped into North Carolina display only the applicable U.S. grade or standard, or a designation that the apples are not graded. The statute prevented producers of Washington State apples from obtaining the benefit of indicating to North Carolina consumers that their apples were of superior Washington state quality, and imposed upon them the cost of removing the Washington grades from their containers. The Court avoided the debate over the statute's intent by focusing on the effect of the statute:

> [W]e need not ascribe an economic protection motive to the North Carolina Legislature to resolve this case; we conclude that the challenged statute cannot stand insofar as it prohibits the display of Washington State grades even if enacted for the declared purpose of protecting consumers from deception and fraud in the marketplace.
>
> When discrimination against commerce of the type we have found is demonstrated, the burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake. (citations omitted) North Carolina has failed to sustain that burden on both scores. . . .
>
> In addition, it appears that nondiscriminatory alternatives to the outright ban of Washington State grades are readily available.

*Hunt*, 432 U.S. at 352–54, 97 S.Ct. at 2446–47. Since *Hunt* the dormant Commerce Clause has not been analyzed from a standpoint rooted in the stated economic goals or policies of the legislature or agency enforcing a state statute. The inquiry has shifted to the resulting discongruity between commerce within and outside a state's borders. *See, e.g., Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270, 104 S.Ct. 3049, 3054–55, 82 L.Ed.2d 200 (1984) ("A finding that state legislation constitutes 'economic protectionism' may be made on the basis of either discriminatory purpose or discriminatory effect." (citations omitted)); *Philadelphia*, 437 U.S. at 624, 98 S.Ct. at 2536 ("The crucial inquiry . . . must be directed to determining whether [the challenged state statute] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental.").

It is also unnecessary for the court to inquire as to the precise extent of the differences between the Intrastate and Interstate Acts. Contrary to the Commission's repeated argument that the differences are not great, there is no "minimum threshold" test that must be satisfied in order for a statute to violate the dormant Commerce Clause. *See, e.g., Maryland v. Louisiana*, 451 U.S. 725, 759–60, 101 S.Ct. 2114, 2136, 68 L.Ed.2d 576 (1981) ("It may be true that further hearings would be required to provide a precise determination of the extent of the discrimination in this case, but this is an insufficient reason for not now declaring the Tax unconstitutional and eliminating the discrimination. We need not know how unequal the Tax is before concluding that it unconstitutionally discriminates."); *Reifschneider v. Cooper Communities, Inc.*, CV 86–0–151 (D.Neb. Aug. 28, 1986) (unpublished decision) (invalidating under Commerce Clause Nebraska statute where only difference between treatment of in-state and out-of-state developers was that the latter must place provision in contract with Nebraska residents eliminating seller's right to deficiency judgment against purchaser).

The Commission has vigorously argued that the Interstate Act is necessary to promote New Jersey's desire to protect its citizens from fraudulent or deceptive out-of-state land developers—those who would

sell "swamplands in Florida." Nevertheless, the differences between the Intrastate Act and the Interstate Act subject the Interstate Act to the strictest of scrutiny under the dormant Commerce Clause. "When discrimination against [interstate] commerce ... is demonstrated, the burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake." (citations omitted) *Hunt*, 432 U.S. at 353, 97 S.Ct. at 2446.

The Commission has not demonstrated any special harm that could befall New Jersey buyers of out-of-state real estate that would justify an Interstate Act that is stricter than the Intrastate Act. The Commission argues that "the State in which the land is located may be unwilling or unable to regulate fraudulent advertising in other states such as New Jersey. But the remedies are more limited. Buyers are less likely to be able to inspect the land or to rely on brokers who are subject to licensure. Jurisdiction may not be exercisable over the sellers. Evidence may be impossible to compel. And individual remedies may be impractical to pursue. There is a real need to regulate interstate solicitations just because they are interstate." Defendants' Brief at 5.

The Commission's argument here must fail, or else the Commerce Clause would be meaningless. The logical result of the Commission's argument is that any state could freely and openly regulate interstate commerce more strictly than intrastate commerce simply because another state's remedial and judicial system might hypothetically be more difficult to pursue. That is no justification for discriminatory legislation, however. There are ample remedies for an injured New Jersey resident to pursue if defrauded by an out-of-state seller of land—common law tort and contract remedies, consumer protection statutes in both New Jersey and the foreign state, and the Federal Act. *Accord, Cranberry Hill*, 629 F.Supp. at 635 (involving New York restrictions applying only to out-of-state sellers of subdivided lands).

Perhaps of more significance, however, is that the Commission does not raise substantive harms that could befall New Jersey residents in purchasing out-of-state land that could not befall the buyer of in-state land. The Commission claims that "the [Interstate] Act is motivated by the sound assumption that New Jersey purchasers need reliable information before deciding to purchase property far from New Jersey, perhaps without even seeing it." Defendants' Brief at 31. However, swampland in New Jersey is as much swampland as that in Florida. Indeed, a resident of northern New Jersey may well be closer to desired property in the Poconos than to desired property in the southern part of New Jersey. There is nothing demonstrated here to show that the "reliable information" that is understandably sought by the Commission on behalf of New Jersey residents could not be obtained by subjecting sellers of in-state and out-of-state land to the same registration, disclosure, and advertising requirements.

The Commission has also failed to demonstrate a need for the differences in the administrative regulations applicable to in-state and out-of-state land sales. For example, N.J.Admin.Code § 11:5–1.25(h)(8), which limits the extent to which sellers of out-of-state land can reimburse New Jersey residents for costs in visiting the land, implements a policy of preventing the abuse of advertising that "emphasizes the reimbursement of travel expenses through cash or merchandise rather than the property being offered." N.J.Admin.Code § 11–5–1.25(h)(8)(v). Accepting the need for such a regulation under the Interstate Act, there is no good reason why such a regulation should not apply to in-state land sales as well.

From these observations it follows that the Commission has not shown why its laudable interest in protecting New Jersey citizens from out-of-state land sale fraud could not be implemented with a non-discriminatory burden on interstate commerce. For example, New Jersey could simply impose the Intrastate Act on both in-state and out-of-state land sales, or in-

deed could impose the Interstate Act on both in-state and out-of-state land sales. The Interstate Act thus does not satisfy the standard attendant to the first tier of the *Brown–Forman Distillers* approach.

The Commission, however, argues that the standard for facial discrimination should not apply to this case, favoring the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970)—the second tier of the two-tiered approach enunciated in *Brown–Forman Distillers*. According to this balancing test:

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.... If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike*, 397 U.S. at 142, 90 S.Ct. at 847.

The court will not apply the *Pike v. Bruce Church* balancing approach because that approach should be followed only when a state regulates "evenhandedly" and that regulation "has only indirect effects upon interstate commerce." *Brown–Forman Distillers, supra; Philadelphia*, 437 U.S. at 624, 98 S.Ct. at 2535 ("[W]here ... legislative objectives are credibly advanced and there is no patent discrimination against interstate trade, the Court has adopted the [*Pike v. Bruce Church*] approach."). *Pike v. Bruce Church* cannot apply where one set of New Jersey statutes applies to sellers of out-of-state lands, and another applies to sellers of in-state lands. This is not "evenhanded."

The cases most on point, which are the progeny of *City of Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978) (New Jersey statute restricting importation of waste into the state invalid), all favor a holding that the Interstate Act is unconstitutional.[2] These cases have struck down a statute pursuant to the Commerce Clause when it discriminated on its face against out-of-state sellers relative to in-state sellers by directly regulating interstate commerce. *See, e.g., Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941, 102 S.Ct. 3456, 72 L.Ed.2d 1254 (1982) (invalidating Nebraska statute requiring persons wishing to withdraw ground water from the state for use in adjoining state to obtain permission from state authorities which is granted only if there is reciprocity between Nebraska and the adjoining state); *Hughes v. Oklahoma*, 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979) (invalidating Oklahoma statute prohibiting the out-of-state transport of minnows to be sold that were obtained from waters within the state); *Cranberry Hill v. Shaffer*, 629 F.Supp. 628 (N.D.N.Y.1986) (invalidating New York statutes imposing registration regulations only on out-of-state subdividers of land); *American Camping Ass'n, Inc. v. Whalen*, 554 F.Supp. 396 (S.D.N.Y.1983) (invalidating New York statute imposing disclosure requirements and advertising restrictions only on out-of-state camps).

The Commission has vigorously attempted to distinguish *Cranberry Hill*, which involved requirements for out-of-state land sales similar to those found in the Interstate Act. The only distinction between *Cranberry Hill* and the case at bar is that in *Cranberry Hill* in-state subdividers of land were not subject to any regulations (other than the Federal Act), while in the case at bar subdividers of in-state land are subject to state regulations that can be complied with at a cheaper cost, and under the threat of lesser penalties, than subdividers of out-of-state land. (Indeed, the

**2.** The court notes that all of these cases were decided after the enactment of the Intrastate Act, which was February 25, 1978, so it would be unfair to suggest that the New Jersey legislature drafted the Intrastate Act in contravention of existing case law. It is more appropriate to conclude that developments in constitutional law since the enactment of the Intrastate Act have obviated its constitutionality. *City of Philadelphia* was decided on June 23, 1978.

**434**

case at bar is the only case this court knows of where there was a comparison of regulatory schemes scrutinized, as opposed to cases where only out-of-state sellers were regulated.) The court concludes, however, that this is a distinction that is not really a distinction at all. The Supreme Court and lower courts interpreting its decisions have consistently struck down state statutes that explicitly impose greater burdens upon out-of-state sellers than in-state sellers. For the court to uphold the Interstate Act would fly in the face of this unmistakeable trend. Like the holding in *Cranberry Hill*, "The court's ruling does not mean that [a state] may not regulate the sale or lease of vacant land. It merely means that if the state choses [*sic*] to regulate in this area, it must do so evenhandedly." *Cranberry Hill*, 629 F.Supp. at 635.

### Commercial Speech

Old Coach also states in its complaint that the Interstate Act constitutes an impermissible prior restraint in violation of Old Coach's First Amendment right to commercial speech. The court having ruled that the Interstate Act is unconstitutional in light of the dormant Commerce Clause, there is no need for a determination as to its status under the First Amendment.

### Severance Clause

The Interstate Act contains a severability clause. N.J.Stat.Ann. § 45:15–16.25. Based on this the Commission urges the court to strike out only those provisions that the court finds to be constitutionally defective, while retaining the other provisions. Generally, severability is an issue of state law, and is analyzed from the standpoint of whether the New Jersey legislature would have enacted the statute were the constitutionally defective provisions not included. *See Trade Waste Management Ass'n, Inc. v. Hughey*, 780 F.2d 221, 231 (3d Cir.1985) and cases cited. "The presumption is that severability was intended so long as objectionable features can be excised without substantial impairment of the principal legislative objective." *Id.* (citation omitted)

The court is of the opinion that the entire Interstate Act should be stricken, notwithstanding its severability clause. The differences complained of by Old Coach appear throughout the statute, and the court sees no way to correct the deficiencies without re-writing the Act. There are simply too many differences and the constitutional problems cannot be solved by the mere surgical excision of offending provisions; the Interstate Act and the Intrastate Act must be conformed to each other, and that is not a problem of excision, but one of re-writing.

### Conclusion

Old Coach's motion for summary judgment is granted, and the Commission's motion for summary judgment is denied. Counsel for plaintiffs shall prepare an appropriate Order and submit it to counsel for defendants for consent as to form.