**OLD COACH DEVELOPMENT CORP., INC. and Land's Edge Enterprises, Inc.**

v.

**Herbert M. TANZMAN, Myles J. Herbert, Robert Klein, Edward Runner, Joseph Panuccio, Charles E. Plumeri, Tom Colitas, Queen E. James, Daryl G. Bell, James Logan, III, Appellants.**

No. 88–5806.

United States Court of Appeals, Third Circuit.

Argued April 17, 1989.

Decided Aug. 2, 1989.

Cary Edwards, Atty. Gen. of New Jersey, Donald R. Belsole, Acting Atty. Gen. of New Jersey, of counsel, James J. Ciancia, Asst. Atty. Gen., on the brief, Jeffrey A. Bartolino (argued), Deputy Atty. Gen., Trenton, N.J., for appellants.

Gage Andretta (argued), Debra Tyukody Mirandi, Brian W. Moore, Kimmelman, Wolff & Samson, P.C., Roseland, N.J., for appellees.

Frederick A. Organ (argued), Paul V. Strawinski, Organ & Strawinski, River Vale, N.J., for amicus curiae, Nat. Ass'n of Real Estate License Law Officials.

Before SEITZ,* SLOVITER, and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This appeal arises out of a grant of summary judgment in favor of plaintiffs Old Coach Development Corporation (Old Coach) and Land's Edge Enterprises, Inc. (Land's Edge) on their claim that the New Jersey Land Sales Full Disclosure Act, N.J. Stat. Ann. §§ 45:15–16.3 to 45:15–16.26 (West 1978) (LSFDA) violated the dormant Commerce Clause. The district court declared the LSFDA unconstitutional because

it discriminated in its plain effect against interstate commerce, and permanently enjoined its enforcement against plaintiffs. The district court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction over a final order of the district court pursuant to 28 U.S.C. § 1291. Our review of the grant of summary judgment is plenary.

## I.

### Facts and Proceedings

The relevant facts are largely undisputed and are fully set forth in the opinion of the district court. *Old Coach Development Corp. v. Tanzman*, 692 F.Supp. 424 (D.N.J. 1988). We reiterate only those facts necessary to our consideration of this appeal.

Plaintiffs are affiliated Pennsylvania corporations which market unimproved subdivided lots of real estate in Pennsylvania primarily to residents of New Jersey, New York, and Pennsylvania. As part of their promotional plan, plaintiffs placed an advertisement in a New Jersey newspaper offering to sell their lots. As a consequence, the New Jersey Real Estate Commission (Commission), the state agency charged with enforcing the LSFDA, informed plaintiffs that the advertisement violated the LSFDA and related regulations, *see* N.J.Admin.Code tit. 11 §§ 11:5–1.1 *et seq.* Plaintiffs were given the option of complying with the LSFDA's registration and disclosure requirements or stating in future advertisements, "This advertisement is not an offering to New Jersey residents." App. at 59.

Plaintiffs filed suit against members of the Commission (defendants), claiming that the LSFDA and its regulations were invalid under the Commerce Clause because they discriminated against interstate commerce, and under the First Amendment because the regulations included provisions which constituted a prior restraint on commercial speech. The National Association of Real Estate License Law Officials participated in the litigation as an amicus curiae on defendants' behalf.

---

* Since the date of argument of this case, Judge Seitz has taken senior status.

Defendants agreed to refrain from applying the LSFDA against plaintiffs pending resolution of the litigation. The district court decided for plaintiffs on cross motions for summary judgment, striking down the LSFDA in its entirety as violative of the Commerce Clause, and therefore did not reach the First Amendment issue. In their appeal, defendants contend that the district court erred in finding the LSFDA invalid on its face, and argue that the court should have applied the more deferential balancing test of *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Alternatively, defendants argue that the district court erred by striking down the entire statute rather than excising the offending portions pursuant to a severability provision in the statute. The parties agreed to a stay of the district court's order pending the resolution of this appeal.

## II.

### Regulatory Framework

We review first the statutory and regulatory framework which the district court examined in reaching its decision. The LSFDA, enacted in 1975, regulates the offer and sale within New Jersey or to New Jersey residents of subdivided land located outside of New Jersey, if such offer and sale is via a common promotional plan. *See* N.J.Stat.Ann. § 45:15–16.4(f). Subdivided land offered by a "single developer or a group of developers acting in concert" which is "contiguous or is known, designated or advertised as a common unit or by a common name ... shall be presumed ... as being offered ... as part of a common promotional plan." *Id.*

The LSFDA requires registration with the Commission of any such subdivision before any property may be offered or sold to New Jersey residents. *See* N.J.Stat. Ann. §§ 45:15–16.7, 45:15–16.21. Similar to federal securities laws, the registration process requires disclosure of ownership interests, audited financial statements, and condition of the land, encumbrances, and plans for completion of promised improvements. N.J.Stat.Ann. § 45:15–16:10; N.J.

Admin.Code tit. 11 § 11:5–1.25(a)(6) & (7). It also requires that a proposed public offering statement be distributed to New Jersey consumers. *See* N.J.Stat.Ann. §§ 45:15–16.12. Initial registration fees and annual renewal fees are assessed pursuant to N.J.Stat.Ann. § 45:15–16.8.

In addition to the protections afforded by the registration process, the LSFDA provides purchasers with a one-week period for rescission. N.J.Stat.Ann. 45:15–16.-12(d). The LSFDA provides a number of criminal and civil enforcement mechanisms for non-compliance and fraudulent statements, including fines of up to $50,000 and/or one-year imprisonment. *See* N.J. Stat.Ann. § 45:15–16.22(a).

The LSFDA, however, only regulates sales of land located outside of New Jersey. *See* N.J.Stat.Ann. § 45:15–16.4(f). In 1978, the state chose to regulate sales of subdivided land located within New Jersey by a separate statutory scheme, the Planned Real Estate Development Full Disclosure Act, N.J.Stat.Ann. §§ 45:22A–21 to 45:22A–42 (West Supp.1989) (PREDA). Like the LSFDA, the PREDA applies to real estate sold via a common promotional plan, but it is administered by the Division of Housing and Urban Renewal of the State Department of Community Affairs (Department) rather than by the New Jersey Real Estate Commission. *See* N.J.Stat. Ann. §§ 45:22A–23(h), 45:22A–24. The PREDA establishes disclosure and public offering requirements substantially similar to those imposed on sellers of out-of-state land by the LSFDA. *See* N.J.Stat.Ann. §§ 45:22A–27 & 45:22A–28.

In determining whether the LSFDA discriminated against interstate commerce, the district court examined the LSFDA and the PREDA in tandem. Although the court recognized that comparison of two separate statutory programs was a unique approach in a dormant Commerce Clause case it concluded, and the parties conceded at oral argument, that such a comparison was the only fair way to determine whether New Jersey's regulatory scheme was constitutional. 692 F.Supp. at 434. Despite the substantial structural similarities

between the two statutory schemes, the district court identified eight differences between the statutes which tended to make compliance with the LSFDA more expensive for sellers of out-of-state land than compliance with the PREDA was for sellers of in-state land, and concluded that the LSFDA was therefore discriminatory in its " 'overall effect.' " *Id.* at 430 (quoting *Brown–Forman Distillers v. New York Liquor Auth.,* 476 U.S. 573, 578–79, 106 S.Ct. 2080, 2083–84, 90 L.Ed.2d 552 (1986)).

The eight differences enumerated by the district court are as follows:

(1) The LSFDA provides a possible punishment of imprisonment for up to one year for violations while the PREDA only imposes monetary liability. *Compare* N.J.Stat. Ann. § 45:15–16.22(a) *with* N.J.Stat.Ann. § 45:22A–38(a).

(2) The PREDA provides an exemption from all of its terms where the common elements of the subdivision are limited to unimproved, unencumbered open space. *See* N.J.Stat.Ann. § 45:22A–25(a)(8). The LSFDA provides no such exemption.

(3) The statutory language of the PREDA exempts disposition of fewer than 100 lots,[1] although developments of condominiums or cooperatives are not exempt. *See* N.J.Stat.Ann. § 45:22A–25(a)(7). The LSFDA provides no such exemption.

(4) Filing fees under the two statutes are structured differently. The PREDA requires a filing fee of $775 plus $75 per lot with no maximum limit, N.J.Admin.Code tit. 5 § 5:26–2.4(a), while the LSFDA requires an initial fee of $250 plus $1 for every lot in excess of one hundred, up to a maximum of $1,000, N.J.Stat.Ann. 45:15–16.8(a)(1). The LSFDA requires annual renewal fees of $250 per year for subdivisions which originally contained fifty or more lots ($150 per year for subdivisions originally containing less than fifty lots).

*See* N.J.Stat.Ann. 45:15–16.8(a)(2). The PREDA does not require any renewal fees.

(5) The LSFDA requires a seller of out-of-state land to provide a statement from a licensed civil engineer that on-site and off-site measures are adequate to prevent damage to property by reason of flooding, erosion and other natural occurrences which are usual or predictable for the area, N.J. Stat.Ann. § 45:15–16.10(f), while the PREDA contains no such requirement.

(6) Regulations promulgated by the Commission under the LSFDA limit the seller's ability to reimburse travel expenses to prospective buyers to transportation plus three days and two nights board. N.J.Admin.Code tit. 11 § 11:5–1.25(h)(8). The PREDA has no such limitation, and although an unrelated New Jersey regulation does limit real estate licensees to offering promotional items "of token value," N.J. Admin.Code tit. 11 § 11:5–1.15(m)(2), its application to reimbursement of travel expenses is unclear.

(7) Both the LSFDA and the PREDA require the filing of an annual report by developers who retain an interest in a registered subdivision. N.J.Stat.Ann. § 45:15–16.14; *id.* at 45:22A–31. Under the LSFDA, the registration of a developer who fails to file such a report will be cancelled. N.J.Admin.Code tit. 11 § 11:5–1.25(c)(2). The PREDA requires that the supervising agency determine that the need to report is terminated. *See* N.J. Stat.Ann. § 45:22A–31.

(8) The LSFDA requires subdividers to list the range of selling prices or rents in their statement of record, *see* N.J.Stat.Ann. § 45:15–16.10(d). The PREDA does not so require, although its regulations do require that the monthly rental of each unit be listed in the application for registration. N.J.Admin.Code tit. 5 § 5:26–3.1(27).

---

**1.** A Department official testified that the Department construes the 100-lot exemption to be inapplicable to sales of lots from developments that initially exceeded 100 lots even though less than 100 units are offered at one time. App. at 64. The plaintiffs' offer which triggered the demand for registration was for less than 100 lots, and, on the face of the PREDA, would have been an exempt transaction. Defendants argue that under their interpretation of the statute, it would not be exempt because there were originally more than 100 lots in that development. Apparently there has been no judicial interpretation of the statutory language, and our decision is not dependent thereon.

In addition to these eight differences, the district court stated that there were other possible differences between the two statutes which it did not identify. 692 F.Supp. at 428. We note that a regulation under the LSFDA requires sellers of out-of-state land to submit proposed advertisements or other promotional materials to the Commission for prior approval. *See* N.J.Admin. Code tit. 11 § 11:5–1.25(h)(2)–(3). The provisions in the PREDA and its regulation which relate to advertising, *see, e.g.,* N.J. Stat.Ann. § 45:22A–27a(14); N.J.Admin. Code tit. 5 § 5:26–5.1–5.2, do not contain any prior approval requirement.[2]

### III.

#### Commerce Clause

Defendants contend that the district court erred by misinterpreting the respective statutes, failing to consider the effect of laws other than the PREDA on sellers of New Jersey land, or exaggerating the discriminatory effects of what are minor differences. Before addressing the merits of this challenge to the district court's analysis, it is necessary to establish the general principles of dormant Commerce Clause jurisprudence.

■ The focus of the dormant Commerce Clause is to prevent states from discriminating against interstate commerce. *See CTS Corp. v. Dynamics Corp.,* 481 U.S. 69, 87, 107 S.Ct. 1637, 1648, 95 L.Ed.2d 67 (1987); *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980); *J. Filiberto Sanitation, Inc. v. New Jersey Dep't of Envtl. Protection,* 857 F.2d 913, 919 (3d Cir.1988); *American Trucking Ass'ns, Inc. v. Larson,* 683 F.2d 787, 790 (3d Cir.), *cert. denied,* 459 U.S. 1036, 103 S.Ct. 448, 74 L.Ed.2d 603 (1982). Statutes which discriminate on their face or in their plain effect against interstate commerce are subject to heightened scrutiny. *See Brown–Forman Distillers Corp. v. New York*

State Liquor Auth., 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986); *City of Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); *Norfolk Southern Corp. v. Oberly,* 822 F.2d 388, 398–401 (3d Cir.1987). This heightened scrutiny places the burden on the state to "demonstrate both that the statute 'serves a legitimate local purpose,' and that this purpose could not be served as well by available nondiscriminatory means." *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986) (quoting *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979)).

Moreover, statutes may also violate the dormant Commerce Clause if they are motivated by a discriminatory purpose or if they have a discriminatory effect. *See Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 270, 104 S.Ct. 3049, 3054, 82 L.Ed.2d 200 (1984); *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 350–51, 97 S.Ct. 2434, 2445–46, 53 L.Ed.2d 383 (1977); *Oberly,* 822 F.2d at 401. A facially neutral statute which does not have a discriminatory purpose and which places only incidental burdens on interstate commerce will be upheld unless such burdens are clearly excessive in relation to the putative local benefits. *See Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970); *Oberly,* 822 F.2d at 398.

■ Defendants argue that the statutory scheme is not discriminatory for two reasons: first, because it does not distinguish on the basis of the citizenship of the sellers and second, because the distinctions when viewed in the light of the totality of New Jersey's statutes and regulations are not in fact discriminatory. To support the first contention, defendants emphasize that a New Jersey seller of an out-of-state subdivision is subject to the restrictions of the LSFDA, and an out-of-state seller of a New

---

**2.** Because we agree with the district court that the LSFDA is invalid under the Commerce Clause, we do not reach plaintiffs' argument that the requirement for prior approval of advertisements violates the First Amendment.

Nevertheless, a prior restraint which is only imposed on sellers of out-of-state land is relevant to our Commerce Clause analysis of New Jersey's regulatory scheme.

Jersey subdivision is subject to the PRE-DA. Although a court may be less likely to find the type of discrimination to which the Commerce Clause is directed when there are substantial in-state interests which are harmed by a regulation, *see Filiberto*, 857 F.2d at 921, discrimination on the basis of citizenship is not the only object of the Commerce Clause.

The Supreme Court has found discrimination where state regulation has an impact on interstate goods themselves, such as when the state regulation blocks the flow of articles in interstate commerce at a state's borders. *See Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941, 102 S.Ct. 3456, 73 L.Ed.2d 1254 (1982) (invalidating Nebraska statute limiting the use of Nebraska ground water in adjoining states); *Hughes v. Oklahoma*, 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979) (invalidating Oklahoma statute prohibiting the exportation of minnows for sale); *Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978) (invalidating New Jersey statute restricting importation of waste into the state).

Although New Jersey's regulatory scheme does not block the flow of commerce at the state's borders, it imposes requirements and costs on sellers of out-of-state land which are not imposed on sellers of New Jersey land. Thus, there is a clear burden on interstate commerce, even if the relevant statute applies evenhandedly without regard to the citizenship of the seller. *See Hunt*, 432 U.S. at 350–52, 97 S.Ct. at 2445–46 (North Carolina law prohibiting the marketing of apples in boxes bearing gradings other than federally established ones impermissibly restricted flow of Washington apples bearing state gradings into North Carolina); *see also Cranberry Hill Corp. v. Shaffer*, 629 F.Supp. 628 (N.D.N.Y.1986) (New York state legislation regulating in-state and out-of-state developers differently struck down as violative of the Commerce Clause). Thus, if the New Jersey regulatory scheme imposes costs on

interstate land transactions which are not imposed on intrastate land transactions the requisite discrimination will be present.

Defendants argue, however, that the costs are not discriminatory, but comparable. Therefore, they contend, the district court should have applied the *Pike* balancing test and weighed the state's interest in protecting New Jersey citizens from the problem of fraud in the sale of real estate against the incidental burdens on interstate commerce.

Although the Supreme Court has recognized that it is difficult to draw the line between a statute that is invalid *per se* and one that must be analyzed under the *Pike* balancing test, *see Brown–Forman*, 476 U.S. at 580, 106 S.Ct. at 2084 we are confident that the district court correctly applied the *per se* invalidity rule because New Jersey's regulatory scheme on its face treats sellers of out-of-state land less favorably than sellers of New Jersey land.

Defendants concede that the PREDA has no counterpart to the LSFDA's criminal penalty of up to one-year imprisonment.[3] Similarly, although they argued that the prior restraint of advertisements for out-of-state subdivisions was justified under the First Amendment, they made no attempt to argue that there was parity of treatment under the two statutes on this score. Although these differences alone might be substantial enough to establish the discrimination prohibited by the Commerce Clause, we will address the defendants' challenges to the other findings of the district court because they relate more directly to the economic impact of the differences in the two statutes.

Defendants argue that in its identification of eight substantial differences between the regulation of sales of instate and out-of-state land, the district court either misinterpreted the statutes, thus exaggerating the effects of insignificant differences in the language of the statutes, or failed to take into consideration the effect

**3.** Although defendants argue that sellers of New Jersey land are subject to imprisonment under various New Jersey criminal statutes, this argument is unpersuasive. These criminal provisions may be enforced against sellers of out-of-state land as well, and the fact remains that only the latter group is subject to the additional sanction provided by the LSFDA.

of New Jersey's overall regulatory scheme. It does appear that in most cases the filing fees under the PREDA will be greater than those under the LSFDA, that the LSFDA requirement that developers list the range of selling prices in their registration documents and the limitation under the LSFDA on reimbursement of travel expenses for prospective purchasers may be too insignificant to be considered burdens on interstate commerce, and that the absence of a provision in the LSFDA for an agency determination that continued registration is unnecessary may also be similarly insignificant in light of the fact that a developer registered under the LSFDA can terminate registration unilaterally by not paying its annual renewal fee. *See* N.J. Stat.Ann. § 45:15–16.8(b); N.J.Admin.Code tit. 11 § 11:5–1.25(c)(2). Thus, we accept *arguendo* defendants' argument that four of the differences referred to by the district court are not in fact or in effect discriminatory against interstate commerce.

We consider, instead, whether the remaining differences between the statutes identified by the district court are sufficiently significant to constitute discrimination against interstate commerce. The district court identified two exemptions available under the PREDA which are not available to developers covered by the LSFDA, one exempting developments of less than 100 lots and the other exempting developments where the only common elements are unimproved, unencumbered open space. *See* N.J.Stat.Ann. § 45:22A–25(a)(7) & (8).

Defendants attempt to minimize these differences by stressing that the LSFDA provides for exemptions on a case-by-case basis at the Commission's discretion. *See* N.J.Stat.Ann. § 45:15–16.6(c). However, there is nothing in the record to indicate the circumstances under which the Commission has granted exemptions, and we have been directed to no regulation on that issue.

Alternatively, defendants produced testimony that the 100 lot exemption is interpreted narrowly so as not to apply to sellers who have acquired lots in subdivisions that initially contained more than one hundred lots. App. at 64–65, affidavit of Stewart Palilonis. Defendants, however, have failed to establish that current agency policies ameliorate the effects of a facially discriminatory difference. Furthermore, a purely discretionary exemption does not provide any guarantee of treatment equivalent to that of a statutorily mandated exemption. More important, defendants have cited no authority which holds that facial discrimination inconsistent with the Commerce Clause can be disregarded based on the manner in which the statute has been or is predicted to be applied.

With respect to another significant difference identified by the district court, defendants argue that had the court looked at the entire corpus of New Jersey land use law it would have found that laws other than the PREDA impose requirements on New Jersey developers which equal those imposed on out-of-state developers by the LSFDA. They cite to no case which imposes on a court in a similar situation the Herculean task of synthesizing all of the state's numerous land use regulations to determine whether the regulatory scheme was discriminatory.

The affidavit of Old Coach's president that the LSFDA requirement of an engineering report could "approximate $50,000" in this case, App. at 55, is unrebutted on this record. Defendants concede that the "PREDA has no actual counterpart to N.J.S.A. 45:15–16.10(f)" [the LSFDA requirement that the developer file an engineering report stating that adequate measures have been taken to prevent property damage due to flooding, erosion and other natural occurrences], Appellant's Brief at 13, but they direct us to a myriad of regulations dealing with engineers, such as the PREDA regulations requiring subdividers of New Jersey property to submit maps that are signed and sealed by a licensed engineer, N.J.A.C. 5:26–3.1(5), and requiring that disclosure materials include a statement concerning "natural forces" that might affect the use of the property. *See* N.J.Admin.Code tit. 5 § 5:26–4.2(a)(17). However, none of the PREDA regulations or other New Jersey provisions referred to require an engineering statement similar to

that required by the LSFDA, a burden which the LSFDA clearly places on the current seller. Nor is there anything in the record which quantifies the cost of the engineering requirement to which defendants refer. Thus, even were we to accept the defendants' premise that the LSFDA's discrimination against interstate commerce must be determined by reference to all potentially applicable state laws and regulations, the record before us shows the LSFDA requirement of an engineering report imposes a significant burden on interstate commerce, without a comparable burden on in-state commerce.

In summary, the LSFDA clearly imposes burdens on developers of out-of-state land which are not borne by developers of New Jersey land. Most significant are the possibility of imprisonment for violations of the LSFDA, the imposition of prior restraints on advertising for out-of-state subdivisions, the provision of statutory exemptions from registration under the PREDA which are not available under the LSFDA, and the LSFDA requirement that the developer provide an engineering statement as to the adequacy of on and off-site measures to protect the property against flooding, erosion and other natural forces.

Defendants stress that the differences in the regulatory schemes are justified because New Jersey residents are subject to abuses in the sale of distant land. We note in passing that the land sold by the plaintiffs in the Poconos in Pennsylvania is nearer to many prospective New Jersey purchasers than is some land in development areas within the state itself. We are not minimizing the potential abuses in the sale of distant land to New Jersey residents, but what is significant for legal analysis under heightened scrutiny is the fact that New Jersey has offered no reason why that state's legitimate purpose could not be served as well by available nondiscriminatory means, *see Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed. 110 (1986), such as by statutes similar to those other states have enacted. *See, e.g.,* Minn.Stat.Ann. § 83.20 *et seq.* (West 1986); Haw.Rev.Stat. § 484–1 *et seq.* (1985). We thus agree with the district court that the LSFDA was *per se* invalid as

a discrimination against interstate commerce and that summary judgment in favor of the plaintiffs was appropriate.

### IV.

#### *Severability*

Defendants' final argument is that even if the LSFDA is unconstitutional, the district court erred in refusing to sever the discriminatory provisions of the statute.

■■■ Issues of severability are generally issues of state law. *See Trade Waste Management Ass'n v. Hughey,* 780 F.2d 221, 231 (3d Cir.1985). The LSFDA contains a broad severability clause. *See* N.J. Stat.Ann. § 45:15–16.25. Under New Jersey law, however, such a provision merely creates a presumption that the invalid sections of the ordinance are severable. *See Inganamort v. Borough of Fort Lee,* 72 N.J. 412, 422, 371 A.2d 34, 40 (1977). The crucial inquiry is whether the legislature intended that the statute "should stand or fall as a unitary whole." *Id.* (quoting *State v. Lanza,* 27 N.J. 516, 527–28, 143 A.2d 571, 577 (1958)). Legislative intent, in turn "'must be determined on the basis of whether the objectionable feature of the statute *can be excised* without substantial impairment of the principal object of the statute.'" *Inganamort,* 72 N.J. at 422, 371 A.2d at 40 (quoting *Affiliated Distillers Brands Corp. v. Sills,* 60 N.J. 342, 345, 289 A.2d 257, 258 (1972)) (emphasis added).

Inferring the legislative intent from the purpose and provisions of the statute, we agree with defendants that New Jersey would prefer to preserve as much of the LSFDA as would survive Commerce Clause scrutiny. We also agree that a number of the discriminatory provisions relied on by the district court which appear only in the LSFDA could be excised without disturbing the core registration and disclosure requirements. Thus, the penal provision and the advertising restrictions could be stricken. Similarly, the LSFDA provision for an engineering report which has no PREDA counterpart could also be stricken, although we have less confidence that New Jersey would want to permit sales of development property without some protection in that regard. Although excision of provi-

sions from the LSFDA of this nature might result in the burdens of the regulatory scheme falling more heavily on sellers of New Jersey land than on sellers of out-of-state land, there is no constitutional impediment to such a result.

In this case, however, excision cannot provide a complete solution because some of the discrimination is effected by provisions in the PREDA that favor sellers of New Jersey land in comparison to the LSFDA's provisions with respect to sellers of out-of-state land. For example, one of the principal bases for our determination that the statutory scheme was discriminatory is the exemption from regulation which the PREDA provides for sellers of fewer than one hundred lots, and for developments where the only common element is unimproved, unencumbered open space. Arguably, we could direct that the exemptions from the PREDA be excised, thereby, for example, making it applicable even to sales of small developments, or we could direct that the LSFDA be read as if it contained the PREDA exemptions, which would, in effect, be importing the PREDA provisions into the LSFDA.

However, although the New Jersey courts might be willing to engraft onto a statute a discrete provision necessary to preserve its constitutionality, *see, e.g., NYT Cable TV v. Homestead at Mansfield, Inc.*, 111 N.J. 21, 543 A.2d 10 (1988) (affirming by equally divided vote Superior Court's reading just compensation provision into Cable Television Act to preserve constitutionality of statute); *Matter of Kimber Petroleum Corp.*, 110 N.J. 69, 539 A.2d 1181 (1988) (reading a good cause defense to imposition of treble damages under the Spill Act by necessary implication to avoid constitutional problems); *Callen v. Sherman's Inc.*, 92 N.J. 114, 455 A.2d 1102 (1983) (reading due process notice and hearing requirements into New Jersey distraint statute), in this case such judicial action would be more complicated because the acts are not otherwise identical. We know of no New Jersey case that has undertaken judicial surgery on this scale. Nor do we

have any basis from which to assume that the New Jersey legislature would prefer limiting the application of the LSFDA rather than making the PREDA more extensively applicable.

On the other hand, we do not think that the other alternative, *i.e.*, excising the exemptions from the PREDA, is a satisfactory solution. Defendants have not suggested that we take such action as a cure for possible infirmity under the Commerce Clause, and we recognize that judicial imposition of the PREDA to sellers of lots from small developments may impose costs upon those seller which the legislature is unwilling to make them bear. In short, we would be undertaking the quintessentially legislative task of formulating a new statute which we are simply not competent to perform. Furthermore, because the district court did not address the numerous other differences in the regulation of in-state and out-of-state land identified in the complaint, we would not be able to hold at this stage that even such drastic actions would cure the burden on interstate commerce imposed by the LSFDA.

Therefore, although we are reluctant to strike the core registration and disclosure provisions of the LSFDA, we see no other solution.[4] Possibly, in light of the district court's ruling, the New Jersey authorities have already prepared some legislation which does not distinguish on the basis of the location of the land, *see, e.g.,* Model Land Sales Practices Act, 7A U.L.A. 669, 679 (1985), as a substitute for the LSFDA. In any event, our legal analysis compels us to conclude that the district court did not err by invalidating the entire LSFDA.

## V.

### Conclusion

For the foregoing reasons, we will affirm the judgment of the district court.

---

**4.** We note that New Jersey citizens will not be entirely bereft of protection because interstate land sales are federally regulated. *See* The In-

terstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.*